**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Cole, et al., | No. CV-20-08030-PCT-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Aramark Sports and Entertainment Services LLC, | |
| Defendant. | |

Pending before the Court are Defendant Aramark Sports Entertainment Services LLC's ("Aramark") Motion to Exclude Expert Testimony (Doc. 35) and its related Motion for Summary Judgment (Doc. 36). Plaintiffs have filed a Response to each Motion (Docs. 37; 39), and Aramark has filed its corresponding Replies (Docs. 38; 40). For the following reasons, the Court denies both Motions.

**I.   Background**

On July 18, 2019, in Lake Powell, Arizona, Plaintiff Joleen Cole was aboard a boat piloted by her husband, Plaintiff David Cole. The couple was moving along and passed Aramark's tour boat, the "Canyon Explorer," which was travelling the other way.

Plaintiffs allege the Canyon Explorer was moving quickly and created an unreasonably dangerous and tall wake. When Plaintiffs' boat hit the wake, Plaintiffs allege the resulting impact fractured several vertebrae in Mrs. Cole's spine. (Doc. 39 at 2). Aramark alleges the Canyon Explorer's wake was not dangerous and that, instead, it was Mr. Cole's improper and unsafe piloting of the boat that caused his wife's injury. (Doc. 36

at 2). Plaintiffs' Complaint brings one claim of negligence, two claims for negligence per se, and one final claim for punitive damages. (Doc. 1 at 4–8).

Aramark seeks to exclude the testimony of Plaintiffs' expert, John Sutton. (Doc. 35). Aramark also seeks summary judgment that the Canyon Explorer's wake was not unreasonably dangerous or, in the alternative, that no evidence supports Plaintiffs' claim for punitive damages. (Doc. 36). The Court addresses each Motion in turn.

## II. Motion to Exclude

Aramark argues the Court should exclude Mr. Sutton's testimony. (Doc. 35 at 1).

### a. Legal Standard

In considering a motion for summary judgment, courts may only consider admissible evidence. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Under Federal Rule of Evidence 702 qualified expert's opinion is admissible if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." The expert's opinion must be "the product of reliable principles and methods." Fed. R. Evid. 702(c).

To determine the admissibility of an expert opinion, courts first determine whether the expert opinion contains specialized knowledge derived from reliable principles and methods. *Daubert v. Merrell Dow Pharm., Inc.* (*Daubert II*), 43 F.3d 1311, 1315 (9th Cir. 1995). Second, courts must evaluate whether the testimony is helpful or "relevant to the task at hand." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). A helpful, relevant opinion "logically advances a material aspect of the proposing party's case." *Id.*

The party seeking to admit the expert opinion bears the burden of proving admissibility by a preponderance of the evidence. *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). "Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). In addition, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in

forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703.

### b. Mr. Sutton's Opinion

Mr. Sutton claims to be a "professional mariner and marine accident investigator," and his opinion concludes that Aramark could have avoided wake-related incidents if it had adopted a "Safety Management System" ("SMS"). (Doc. 35-2 at 2, 12).

The SMS, Mr. Sutton explains, is a voluntary practice within the passenger vessel industry that assists in the "development of policies and procedures to achieve lessons learned from past incidents . . . ." (*Id.* at 9). Mr. Sutton argues there are many past incidents from which Aramark could have learned lessons. For support, he cites complaints of wake-related accidents involving Aramark dating back to 2006. Some of these complaints are from government investigations, and some are from depositions in other cases involving allegations that Aramark's wake caused injury. (*Id.* at 6–8).

Mr. Sutton claims these "allegations/incidents are of utmost importance in any accident investigation, especially if the same behavior is exhibited repeatedly over time." (*Id.* at 3). He claims that these sorts of incidents are routinely examined in his industry. "Marine accident investigators routinely look at the history of a commercial operator to develop a deeper understanding of how accidents occur and whether those accidents can be prevented." (*Id.*)

Because of these incidents, Mr. Sutton argues Aramark was "well aware" that their vessels were "routinely producing wakes significant (large) enough to create injury and complaints from other waterway users on Lake Powell." (*Id.* at 6). However, Mr. Sutton concludes, Aramark has not employed an SMS system that would enable it to discover "lessons learned" from each of the wake incidents.

### c. Discussion

Aramark first critiques Mr. Sutton's qualifications because he cannot offer any expertise in determining whether the size of a wake created by a vessel like the Canyon Explorer is unreasonably dangerous. (Doc. 35 at 4). Whether the wake was unreasonably

dangerous is an element of Plaintiffs' claims, but it is not the only one. Plaintiffs also claim Aramark demonstrated a "lack of concern for public safety over a period of many years . . . ." (Doc. 1 at ¶ 45). Mr. Sutton's opinion supports this allegation to the extent it shows Aramark failed to employ the SMS even when it had notice that wakes could potentially be an issue. The fact that Mr. Sutton does not address one particular element of Plaintiffs' claims does not make the opinion inadmissible. *See Primiano*, 598 F.3d at 565.

Second, Aramark critiques the fact that Mr. Sutton is not a member of the Passenger Vessel Association ("PVA"), an organization that promotes the SMS, and therefore does not know what the PVA members discuss "during their safety meetings about boat wakes." (Doc. 35 at 4). As was said above, whether Mr. Sutton is aware of the PVA's thoughts on boat wakes is not necessary. He need not address whether the wake is unreasonably dangerous for his testimony to be admissible. *See Primiano*, 598 F.3d at 565.

Third, Aramark critiques Mr. Suttons use of "a list of 28 unsubstantiated wake complaints . . . ." (Doc. 35 at 5). Aramark argues these allegations are unproven and constitute hearsay. Notably, Aramark does not contest Mr. Sutton's assertion that marine accident investigators routinely use such complaints to understand whether an operator has engaged in a pattern of behavior. (Doc. 35-2 at 3). "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Therefore Mr. Sutton's opinion is admissible, even if the supporting data were not, because the incidents are routinely used in maritime accident investigation.

Overall, the Court finds that an understanding of maritime safety practices is a specialized knowledge. Mr. Sutton has been a United States Coast Guard licensed mariner for nearly forty years, is a co-founder of the American Inland Mariners Association, and has been awarded the "Department of Transportation, United States Coast Guard Commendation Award for outstanding commitment to maritime safety." (Doc. 35-1 at 2–9). The Court finds no reason to doubt Mr. Sutton's assertion that his analysis is based on reliable principles and methods. The Court finds the opinion is relevant and may assist the

jury understand what tools the maritime industry employs to prevent accidents, such as the SMS. In sum, the Court finds Plaintiffs have carried their burden and shown by a preponderance of the evidence that Mr. Sutton's opinion is admissible. The Court denies Aramark's Motion to Exclude.

### III. Motion for Summary Judgment

The Court now considers Aramark's Motion for Summary Judgment, which seeks to dismiss this matter or, in the alternative, strike the Complaint's claim for punitive damages.

#### a. Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A

conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

### b. Analysis

Aramark argues it is entitled to summary judgment because its experts have calculated that the wakes created by the Canyon Explorer could only have been between one to two feet high and would pose no danger to boaters who know how to properly navigate such small wakes. (Doc. 36 at 3). Plaintiffs argue they have multiple eyewitness accounts of the incident claiming that the wake generated by the Canyon Explorer was significantly higher than Aramark's calculations. (Doc. 39 at 4). One claims it was between six and ten feet high. (*Id.* at 5).

Plainly, the parties dispute how high the wake was. Aramark argues it would be an error "to accept the testimony of admittedly untrained biased laymen to prevail on this issue." (Doc. 36 at 6). But it is not. At the summary judgment stage, Plaintiffs' evidence is "to be believed . . . ." *Anderson*, 477 U.S. at 255. And the Court finds that this factual dispute is genuine because a reasonable jury could find the eyewitness testimony more credible than Defendant's expert testimony and return a verdict in Plaintiffs' favor. *Id.* at 248. The Court, therefore, declines to enter summary judgment and dismiss this case.

Likewise, the Court declines to strike the claim for punitive damages. Aramark argues that the "facts of this case simply will not support a punitive damages allegation." (Doc. 36 at 7). Aramark cites nothing to support this position. As the moving party in a motion for summary judgment, Aramark must identify portions of the record, including pleadings, depositions, answers to interrogatories, admissions, or affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. It has not, and so Aramark fails to carry this initial burden. The Court also notes Mr. Sutton's opinion plainly gives rise to a factual dispute regarding the punitive damages claim.

### IV. Conclusion

For the reasons stated above, the Court denies Aramark's Motion to Exclude (Doc.

35) and its Motion for Summary Judgment (Doc. 36).

Accordingly,

**IT IS HEREBY ORDERED** that Aramark's Motion to Exclude (Doc. 35) is **DENIED**.

**IT IS FURTHER ORDERED** that Aramark's Motion for Summary Judgment (Doc. 36) is **DENIED**.

**IT IS FINALLY ORDERED** that that in light of the denial of the Motion for Summary Judgment, the parties are directed to comply with Paragraph 11 of the Rule 16 Scheduling Order (Doc. 18) regarding notice of readiness for pretrial conference.

Dated this 12th day of October, 2021.

Honorable Diane J. Humetewa
United States District Judge